Tom PETUSKEY, Clerk of the District Court in and for Oklahoma County, Oklahoma, Petitioner,

v.

Joe CANNON, Judge of the District Court in and for Oklahoma County, Oklahoma, Respondent.

No. 68671.

Supreme Court of Oklahoma.

July 21, 1987.

James Craig Dodd, Craig Dodd & Associates, Enid, for petitioner.

Robert H. Henry, Atty. Gen., Neal Leader, Susan Stewart Dickerson, Asst. Attys. Gen., Oklahoma City, for respondent.

SIMMS, Justice:

Original proceeding wherein the Court Clerk of Oklahoma County requests this Court to assume original jurisdiction and issue mandamus and prohibition against the Presiding Administrative Judge of Oklahoma-Canadian Counties. This dispute arose because of the Presiding Judge's issuance of certain administrative orders which directly affected Oklahoma County court clerk personnel.

Because the extent and scope of the administrative authority of the Administrative Judge over Court Clerks and their deputies has become a matter of disagreement in counties other than Oklahoma County, and because the authority of the Administrative Judge and Court Clerk must be more clearly defined, we assume original jurisdiction and issue this opinion for the reason the question affects a vital relationship within the judicial service.

## I.

Shortly after taking office, Tom Petusky (Petitioner), the duly elected District Court Clerk for Oklahoma County, Oklahoma, instigated an attempt, by means of a form letter and waiver of judicial hearing, to collect fees, costs and fines in cases before the court. Honorable Joe Cannon (Respondent), the Presiding Judge of the Administrative District of the Seventh Judicial District "summarily rescinded" the moneys Cannon had ordered paid in felony and misdemeanor cases for 1983–86, which were involved in the collection effort. Thereafter, and to date, Respondent continued ordering Petitioner to refrain from such attempts to collect fines through the use of a waiver of judicial hearing.

After becoming Presiding Judge on January 1, 1987, Respondent issued Administrative Order No. AD7–87–6, directing that "no-file" bonds be returned to bondsmen by the Judge, and exonerated. "No-file" bonds are ones where no criminal information is filed.

On March 16, 1987, Respondent entered two administrative orders. No. AD7–87–19 directed Petitioner to immediately assign a deputy court clerk to the Juvenile Bureau on a full time basis; No. AD7–87–20 forbad Petitioner from attempting to collect court costs from landowners who formally demanded a jury trial in condemnation cases.

Respondent issued Administrative Orders AD7–87–24 and 25, on April 15, 1987. Both dealt with the extent of the court's authority over the Oklahoma County District Court Clerk and his appointed deputies. Both were withdrawn on May 11, 1987, by Administrative Order AD7–87–31.

By Administrative Order AD7–87–30, dated May 11, 1987, Respondent directed that deputy court clerks are employees of the Court Clerk and subject to his control, except for those who are regularly assigned to a Judge, who shall be under the exclusive control of their assigned judge, as to hours, reporting, duties, responsibilities, and when vacations are taken. He further ordered that no deputy court clerk may be selected to serve for a Judge without the approval of the Judge.

Petitioner asserts that Respondent, by these Orders, unconstitutionally infringed upon Petitioner's statutory duties, obligations and privileges.

## II.

### POWERS AND AUTHORITIES OF ADMINISTRATIVE JUDGE AND DISTRICT COURT JUDGE

The issue before the Court is whether the District Court Clerk is subject to the administrative authority of the Presiding Judge of his Judicial Administrative District. Put more simply, whether the court clerk is under the direction and authority of his court, and if so, to what extent.

The beginning point of this analysis must be the Oklahoma Constitution and statutes, and the relative powers they give to judges and district court clerks. Art. VII of the Oklahoma Constitution provides for a unified system of judicial management under the authority of the Supreme Court. Section 4 of that Article sets forth that jurisdiction of the Supreme Court extends to a general superintending control over all inferior courts. Sec. 6 then vests the Supreme Court in general, and the Chief Justice in particular, with general administrative authority over all courts in the state, in accordance with its rules.

The Supreme Court is given complete statutory authority to promulgate rules in 20 O.S.1981, § 24:

"Nothing herein shall impliedly limit the rulemaking authority which the Supreme Court inherently has or has by virtue of other statutory provisions."

Art. VII of the Oklahoma Constitution also establishes district courts. Beginning with Sec. 7, each judicial district shall have one district court, which shall have such number of judges as prescribed by statute. The state is then divided into Judicial Administrative Districts, pursuant to Art. VII, Sec. 10. Each one consists of one or more district court judicial districts. Part (b) of that section provides for the election of the Presiding Judge by the District and Associate District Judges of each Judicial Administrative District. Part (b) further specifies that "[s]ubject to the authority of the Supreme Court, the Presiding Judge shall have general administrative authority over the Judicial Administrative District ..."

Title 20, O.S.1981, § 23 authorizes this Court, and the Presiding Administrative Judge, to adopt rules that are calculated to bring about "a more speedy and efficient administration of justice," where not inconsistent with the Rules of the Supreme Court.

Finally, through its ultimate rule-making authority, this Court has promulgated Rule 2, on the Administration of Courts, which reiterates the administrative and supervisory authority of the Presiding Judge. It reads, in pertinent part:

"Subject only to the rules, orders and directives of the Supreme Court or the Chief Justice, the Presiding Judge shall have general administrative authority and supervision over all courts within the district and over all *judicial personnel* and court officials serving in the district. "All judicial personnel and court officials within a judicial administrative district *shall comply* with the rules, orders and directives of the Presiding Judge.... The Presiding Judge promptly shall report to the Chief Justice any instance of noncompliance occurring with in the judicial administrative district either by judicial personnel or court officials." (E.A.) 20 O.S.1981, Chapt. 1, App. 2, Rule 2.

■ These references to administration of courts make it clear the judiciary has exclusive authority to manage its own affairs. See, *Ex parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682, 685 (1980). The purpose of a unitary system of judicial management is to centralize the administrative power of the entire judicial system in the Supreme Court, and make the Chief Justice the administrative head of all courts. *Rutledge v. Workman*, W.Va., 332 S.E.2d 831, 834 (1985). The Chief Justice, in turn, has delegated, by this Court's Rule, to the Administrative Judge the authority to supervise all judicial personnel in his district.

Turning to a district court clerk, the Oklahoma Constitution delineates the clerk as a county officer. Okla. Const., Art. XVII, Sec. 2. A statute then provides for the election of a court clerk to each county. 19 O.S.1981, § 131. However, these provisions, codified under "Counties," do not mean the court clerk has the right to exercise unbridled discretion over the administration of his office.

Petitioner acknowledged, both in his Reply to Respondent's Response to Petitioner's Application to Assume Original Jurisdiction and in his oral argument, the power of the Administrative Judge to control the court clerk in certain matters. While some legal scholars would vest this authority in the inherent powers of the Court, we choose to follow another theory.

Title 12 of the Oklahoma Statutes sets forth many of the duties and powers of a district court clerk. Sec. 35 in particular specifies, in pertinent part, that "[t]he clerks of each of the courts shall exercise the powers and perform the duties imposed upon them by the statutes of this state and *by the common law.*" (E.A.) A court clerk is, therefore, clearly bound by common law. Oklahoma common law has consistently referred to a court clerk as an officer or arm of the court, whose primary function is ministerial in nature.[1] *Matney v. King,* 20 Okl. 22, 93 P. 737, 745 (1908), (clerk of the district court is an officer of the court, to be recognized as such); *Ramsey v. King,* 20 Okl. 67, 93 P. 754 (1908), (clerk of the district court is an officer of the court); *Hirsh v. Twyford,* 40 Okl. 220, 139 P. 313 (1913), (court clerk, whose duties are ministerial, is the arm of the court, subject to its control); *Moroney v. Tannehill,* 90 Okl. 224, 215 P. 938 (1923), (functions of the clerk of the court are purely ministerial); *Barrett v. Barrett,* 207 Okl. 234, 249 P.2d 88 (1952), (clerk is the court's arm; he acts ministerially, under the court's exclusive jurisdiction and direction).

In addition to common law, a review of the statutory duties of the Office of District Court Clerk,[2] further establishes the clerk is ultimately connected to the existence, dignity and function of the judiciary. It is entirely contrary to the centralized, hierarchial, and well organized structure of the state judiciary for the court clerk to be a "loose cannon sliding around on the county's judicial deck." *Rutledge v. Workman,* supra.

█ Therefore, we conclude the District Court Clerk is "judicial personnel" as the term is used in Rule 2 of Administration of Courts, supra. He is an arm of the court, whose duties are ministerial, except for those discretionary duties provided by statute. As such, the Court Clerk is subject to the control of the Supreme Court, and the supervisory control it has passed down to the Administrative District Judge in his Judicial Administrative District in the performance of his ministerial functions.

## III.

### ADMINISTRATIVE JUDGE'S POWERS OVER COURT CLERK ARE NOT UNLIMITED

█ Even though a court clerk is subject to the court's control, the court cannot, merely by reason of the general relation which exists between the court and its clerk, control actions the clerk takes pursuant to a statute giving a court clerk personal authority to exercise according to his own judgment. 15 Am.Jur.2d, Clerks of Court, § 1, p. 140 (1976).

The Idaho Supreme Court, supported the premise set forth in 15 Am.Jur.2d. In *Crooks v. Maynard,* Idaho, 732 P.2d 281 (1987), the district court clerk sought a writ of prohibition to prevent an administrative district judge from enforcing an administrative order that prohibited a deputy clerk from acting as such. 732 P.2d at 282. Even though that Court determined the Constitution and statutes make it clear the district court clerk is a judicial officer, subject to the administrative power of the Supreme Court, the Court qualified the power and control of the judiciary over the office of the district court clerk. Because Idaho statutes specifically give the district court clerk the power to hire deputy clerks, the judiciary does not have the authority to choose "alter ego" deputies to perform functions and duties in the place of the clerk. *Crooks* at page 287.

The powers of an administrative judge over the district court clerk in Oklahoma are likewise limited by the statutory authority given court clerks in Title 19. 19 O.S.1981, sec. 162, gives the district court clerk authority to appoint regular and special deputies, and to fix their salaries and compensation. Sec. 180.65(A) provides that a district court clerk shall have such regu-

---

**1.** Hereinafter, the term "ministerial" is used to mean "That which is done under the authority of a superior; ... That which involves obedience to instructions, but demands no special discretion, judgment or skill." Black's Law Dictionary, 5th ed.

**2.** See, Title 12, §§ 21–35.1, 51–52, 54, 61–68, 71.

**1122**

lar or technical deputies, or other help, of whatever title the clerk may ascribe, at such rates of salary or pay as the clerk may establish the need of, and the county excise board may approve. Part (B) of that section provides, in pertinent part, that "[a district court clerk] shall designate....a first or chief deputy or assistant who shall be chargeable with all the duties of such principal officer, while subject to the direction of the same...."

■ Clearly, the administrative Judge's authority to supervise the clerk of the district court in the discharge of his ministerial duties does *not* include the power to dictate who shall be hired as a deputy, and at what rate of compensation.

We conclude, therefore, that the District Court Clerk has the authority to choose his "alter ego" deputies. In addition, the Clerk shall have ultimate responsibility to approve the payroll of his assistants, including setting their rate of pay, subject to budgetary restrictions, as well as their vacation times.

### IV.

### COLLECTION OF FINES, FEES AND COSTS

The assessment of a fine is exclusively an adjudicative function of a judge, and not the court clerk. 22 O.S.1981, § 961, et seq. Furthermore, Title 22, O.S.1981, § 983 provides that:

"In no case may a sentence to pay a fine be converted into a jail sentence automatically, i.e., without a hearing and a judicial determination, memorialized of record, that the defendant is able to satisfy the fine and costs by payment but refuses or neglects so to do."

See, *Rutledge v. Turner*, Okl.Cr., 495 P.2d 119 (1972).

Title 19 O.S.1981, § 215.4 charges the District Attorney, with the duty of prosecuting such matters for collection. Moreover, 28 O.S.1981, § 101 provides, in relevant part:

"If the defendant is without means to pay the fine, fees or costs, the total amount owed shall be entered upon the

judgment docket and thereupon the same remedies shall be available for the enforcement of said judgment as are available to any other judgment creditor."

■ These statutes clearly establish Petitioner's allegation that Respondent improperly interfered with Petitioner's collection efforts is unfounded. The district court clerk has no authority to act in a judicial capacity and demand payment of fines, fees and costs, until there has been an adjudication that the person must pay. However, once the fines, fees or costs are ripe for collection, the clerk should not be discouraged from collecting the *overdue* moneys. It should be pointed out the Court Clerk in civil cases is authorized by statute to tax costs. 12 O.S.1981, § 933.

### V.

### RETURN OF NO-FILE BONDS

■ Title 59, O.S.Supp.1987, § 1332(E) provides that the court clerk shall charge a $5.00 fee "for the initial filing of any bond or release of defendant." This is part of the statutory provisions regarding bond forfeitures in cases pending before the court. It does not address the situation in which bail is taken by the judge rather than the court clerk.

Even though a Judge is authorized to accept bail, he must cause the bond to be filed with the Clerk of the Court, who is authorized to assess a $5.00 fee. Therefore, Respondent exceeded his authority with regard to AD–7–87–6.

### VI.

### ASSESSMENT OF COURT COSTS IN CONDEMNATION PROCEEDINGS

■ Pursuant to 11 O.S.1981, § 38–111(B), the procedure to be followed in acquiring property in condemnation cases by eminent domain is the same procedure prescribed for railroad companies in Title 66. 66 O.S.1981 § 55 provides, in pertinent part, that "[i]f the party demanding (a jury) trial does not recover a verdict more favorable to him than the assessment of the commissioners, all costs in the district

court may be taxed against him." This statute sets forth the assessment of costs *after* a verdict. It does not pertain to relief from *prepayment* of jury demand fees, as required by 28 O.S.Supp.1987, § 152.1.[3] Therefore, Respondent exceeded his statutory authority with Administrative Order AD7-87-20. We conclude it is discriminatory and unequal protection to not assess a prepayment fee for a jury trial for parties in certain condemnation cases, while requiring it in other condemnation cases.

## VII.

### SUPERVISORY CONTROL OVER DEPUTIES

█ It has been established that the district court clerk has the authority to hire deputies to perform the functions and duties of the clerk. However, the right of the clerk to exercise discretion in hiring deputies must be balanced against the constitutional mandate of a unified and integrated judicial system. To further the orderly administration of justice, judges must be able to establish and require clerks to follow qualification guidelines for deputies who are assigned to assist the judge. Judges may reject the assignment of a deputy clerk designated to serve the Judge, however, a Judge has no authority to interfere with the Clerk's statutory duty to independently hire or fire his deputies.

█ Furthermore, the Administrative Judge must have some degree of control over the day-to-day operation of the clerical personnel while they are in attendance on the court. A judge does not have the right to tell his deputy when to come to work, but the judge does have the right to tell him when to be in the judge's chambers or courtroom. The judge may tell his deputy clerk when his duties are completed for the day, but not when the deputy may leave the courthouse. Furthermore, it is the duty of the clerk to furnish a judge necessary personnel when the judge deems it essential to the orderly and efficient operation of the court.

## VIII.

By assuming original jurisdiction in this dispute, we do not extend an open invitation to have all judge-clerk disputes brought before this Court for litigation. Okla. Const., Art. VII, § 6, establishes an Administrative Director of the Courts, who acts as the alter ego of this Court in administrative matters. The Administrator is the right arm of the Chief Justice in administrative matters. We very strongly suggest that when disputes such as those addressed in this opinion arise, the matter should be presented to the Administrative Director of the Court and his legal staff for resolution before resort is had to adjudicative process. This Court is overburdened with appeals resulting from the recent explosion in litigation. We suggest that administrative channels can expedite the solution to these types of problems more speedily than the filing of another lawsuit.

## IX.

### CONCLUSION

In order to have a unified, organized judiciary in Oklahoma, there must be one individual at the apex: the Chief Justice of the Supreme Court. Through the powers vested in the Supreme Court, by the Oklahoma Constitution and statutes, it has passed down the authority for the administration of district courts to the Administrative Judge of an Administrative Judicial District. This authority is essential for the orderly operation of justice.

In ministerial matters, the District Court Clerk is serving his Court subject to the authority of the Administrative Judge. Even though he may disagree with a particular order of the Administrative Judge, he has no discretion but to follow it in ministerial matters.

However, the powers of the Administrative Judge are not without limitation. The

---

**3.** 28 O.S.Supp.1987, § 152.1 provides in pertinent part: "... court clerk *shall* collect the following charges *in addition to the flat [filing]* *fee* [set forth in § 152 ... 6. When jury is requested ... $30.00." (E.A.) Again, the clerk is given *no* discretion in collecting this fee.

Judge is not omnipotent, insofar as the court clerk is concerned. He has no authority to issue directives, under the guise of administrative orders, which contravene the statutory authority given to the district court clerk.

ORIGINAL JURISDICTION ASSUMED. PETITION FOR WRIT OF MANDAMUS/PROHIBITION GRANTED IN PART, DENIED IN PART.

HARGRAVE, V.C.J., and HODGES, SIMMS, OPALA and ALMA WILSON, JJ., concur.

LAVENDER, J., dissents.

DOOLIN, C.J., and KAUGER and SUMMERS, JJ., disqualified.

LAVENDER, Justice, dissenting:

Because I am unable to find any Constitutional, statutory or inherent authority which would support the actions of the Respondent Administrative Judge as reflected in his orders AD 7–87–6, AD 7–87–19, AD 7–87–20 and AD 7–87–30,[1] I would hold such orders to be void.

Neither can I agree with the majority opinion's conclusion: "In ministerial matters, the District Court Clerk is subject to the authority of the Administrative Judge."

If I were writing for the court I would confine the authority of the Administrative Judge over the Court Clerk to those instances where the Court Clerk has failed to act, or is acting in such a manner as to effectively thwart the administration of justice or the operation of the courts. These would be instances where, as in *Hirsch v. Twyford,* 40 Okl. 220, 139 P. 313 (Okla.1913), the Clerk refused to enter a court's judgment of record. See also *Barrett v. Barrett,* 207 Okl. 234, 249 P.2d 88 (Okla.1952).

I would agree that if the Court Clerk refused to assign a deputy court clerk to a court upon request of the judge of that court, or having furnished one, arbitrarily removed the deputy against the wishes of the judge, or supplied the judge with an incompetent deputy that, in these instances, the authority of the judge to control his court and to see that the business of the judicial department is done expeditiously and without unnecessary delay or interference by others, would permit the issuance of appropriate directive orders by the Administrative Judge to the Court Clerk, to correct such problems. The above concerns were involved in *Rutledge v. Workman,* 332 S.E.2d 831 (W.Va.1985).

In *Rutledge* the Clerk was found to be subject to an order of the judge prohibiting the transfer of the judge's courtroom deputy without the court's approval. A long history of conflict in this area had occurred during which the court's efficiency was impaired by the Clerk's assignment of incompetent clerks to the judge's courtroom. Transfer out of her courtroom of competent clerks, without approval of the judge, had also occurred.

But compare *State of Missouri ex rel. Geers v. Lasky,* 449 S.W.2d 598 (Mo.1970) in which it was held that where a similar (*Rutledge*) order was entered, the same was void as not authorized by either a statute or by the inherent power of the court. It is interesting that in *Geers* "inherent power" of a court was confined to "(the power) to do things necessary for administration of justice ... (which are) reasonably necessary to preserve the court's existence and protect it in the orderly administration of its business...."

There is no allegation here that the challenged orders were required because the Clerk had failed to perform the duties of his office, which failures were preventing

---

1. The orders attacked here directed the Clerk to return "no file bonds" to the bondsman without collecting a charge for costs—these were instances where no criminal charge was filed. Another order directed the Clerk to "immediately" assign a deputy court clerk to the Juvenile Bureau to serve full time. Another prohibits the Clerk from accepting cost deposits from landowners in condemnation actions when they request a jury trial notwithstanding a statutory command to the contrary. The last order No. AD 7–87–30 advised the Court Clerk that courtroom clerks would, in the future, no longer be under the control of the Clerk but would henceforth be under the exclusive control of their assigned judge as to their hours, reporting, duties, responsibilities and as to when they may take vacations.

the Judges of the District Court of Oklahoma County from effectively performing their functions.[2] Without these compelling considerations I am unable to see the authority or the necessity for controlling the functions of the County Court Clerk, who was, of course, elected by and is as responsible to the voters of Oklahoma County as is Respondent.

In my view the Court's opinion effectively transfers all court related functions (not specifically enjoined by statute upon the Clerk to perform) from a constitutionally established officer (Okla. Const. Art. 17 § 2) to an Administrative Judge. Notwithstanding the Constitutional provision does not spell out the duties of the county court clerk, he is nevertheless a Constitutional officer with those duties essential to the nature of the office. See *St. John v. Superior Court, etc.*, 87 Cal.App.3d 30, 150 Cal. Rptr. 697 (Calif.App.1978).

OPALA, Justice, concurring.

Although I concur generally in the court's pronouncement, I offer my own analysis in the hope of providing some easy-to-follow *guidelines* for a more *harmonious* interaction of the court clerk with the presiding judge of the judicial administrative district—the two *constitutional officers*[1] now locked in combat for the control of certain management functions in the operations of the district court.

The presiding judge has "general administrative authority" over the judicial administrative district.[2] The personnel who stand subordinate to this authority, which is subject to the Supreme Court's systemwide control conferred by Art. 7 § 6, Okl. Const.,[3] are judicial officers of the district court and their staff. The latter resource is made up of court reporters and bailiffs. The presiding judge's administrative power over human resources not in the direct employ of the state district courts is circumscribed by law.[4]

Unlike court reporters and bailiffs, courtroom deputies, known in some parts of the state as "minute clerks," just as other deputies, are the employees of the court clerk, an independently elected *county executive* heading a service agency for the district court. In the performance of all their *ministerial* functions for the court, the clerk and his deputies are subject to *summary control* by the judges.[5] Neither advance notice nor the opportunity for a hearing need be afforded the court clerk or his deputies if a judicial command calls for the performance of a *ministerial* act.[6]

Personnel management of human resources on the clerk's payroll as his deputies is *not* a *ministerial* but rather an *executive* function dischargeable by the clerk in his capacity as a *county* official. Courtroom deputies stand under a judge's *direct* and *exclusive* control only for so long as they are *actually* performing duties within a courtroom, the judge's

---

2. According to petitioner's brief when an opening occurs for a courtroom deputy the judge actually conducts the interviews and when he has selected the person he desires, the clerk employs that individual. If the judge is unhappy with the clerk serving him that person is reassigned or replaced. When a courtroom clerk becomes eligible for a merit pay increase the judge participates in the pay raise decision. It is difficult to see how more cooperative the clerk could be.

1. Both officials may claim that they are holders of a constitutional office. Art. 17 § 2, Okl. Const., creates the office of clerk of the district court; Art. 7 § 10(b), Okl.Const., establishes the office of presiding judge in each judicial administrative district.

2. Art. 7, § 10(b), Okl.Const.

3. *Court Fund of Tulsa County v. Cook*, Okl., 557 P.2d 875, 877 [1976].

4. Persons who are not serving as judges or as their staff members may not be *managed as resources of the judicial service*. See in this connection, *Earl v. Tulsa County Dist. Court*, Okl., 606 P.2d 545, 548 [1980] and *State ex rel. Trimble v. Brown*, Okl., 488 P.2d 1217, 1222 [1971]. Judicial rule-making power cannot be used to regulate the activities of an executive agency. See, *Sterling Refining Co. v. Walker*, 165 Okl. 45, 25 P.2d 312, 320 [1933].

5. *Barrett v. Barrett*, 207 Okl. 234, 249 P.2d 88 [1952]; *Hirsch v. Twyford*, 40 Okl. 220, 139 P. 313 [1913] and *Matney v. King*, 20 Okl. 22, 93 P. 737, 745 [1908].

6. *Barrett v. Barrett, supra* note 5.

chambers, the jury room or some other courthouse space directly controlled by the judges. These deputies remain under like control when they are on a *ministerial* mission elsewhere in the courthouse pursuant to a judge's direction.

Judges are powerless to exercise pure *managerial control* over *any* of the court clerk's deputies. They may *not:* (a) choose the deputies who are to be assigned to them for courtroom service; (b) dictate to the court clerk either the salary terms or other payroll benefits a courtroom deputy is to receive and (c) specify the time period a courtroom deputy may be off on vacation leave.

A presiding judge *may, without advance notice or hearing,* [a] direct the court clerk to assign courtroom deputies, as needed, for duty with individual judges and [b] authorize each judge to regulate, on any given day, the time when an assigned courtroom deputy is to report for service and to return to the court clerk's office. A deputy is deemed to be under the exclusive control of the court clerk both *before* and *after* he enters upon daily courtroom assignment duty.

In short, the quantum of control the judiciary may exercise over the court clerk's office must vary with, and be tailored to, the function whose performance is to be exacted. Court clerk personnel ordered for assignment to courtroom duty may be *temporarily requisitioned and supervised as a needed resource* for so long as their service to the judiciary is termed essential;[7] but these deputies may *not* be chosen for *hiring,* slated for *firing* or otherwise treated as if they were judicial staff persons. If need be, a presiding judge may *direct* that a courtroom deputy be relieved of duty for unacceptable job performance and that a person with adequate skills be assigned as replacement. Although deployable to the full extent necessary for the performance of the court's constitutionally mandated mission, courtroom deputies must nonetheless be utilized in a manner that does not invade the court clerk's managerial prerogative over any human resources in his employ as a *county* official.

---

7.  The judiciary's constitutionally invested power to provide itself with resources essential for the performance of duties the courts are commanded by our fundamental law to carry out is discussed in *Little v. County Excise Board of Marshall County,* 161 Okl. 40, 16 P.2d 1080, 1082 [1932].