Robert Eugene WEBB,
# 76157, Appellant,

v.

Gary MAYNARD, Director, and Jack Cowley, Warden, and The Oklahoma Department of Corrections, Appellees.

No. 79934.

Supreme Court of Oklahoma.

Nov. 7, 1995.

Rehearing Denied Dec. 13, 1995.

Robert Eugene Webb, Stringtown, Pro se.

Carolyn E. Kroger, Assistant General Counsel, Oklahoma Department of Corrections, Karin M. Kriz, Assistant Attorney General, Oklahoma City, for Appellees.

SIMMS, Justice.

Robert Eugene Webb appeals the district court's denial of a writ of prohibition against the appellees, the Department of Corrections, Gary Maynard, the Department's Director, and Jack Cowley, the warden at the prison facility in which Webb is incarcerated. Webb requested the district court to issue an order prohibiting the Department from withholding ten percent (10%) of his prison "wages"[1] to apply towards court costs and victim compensation fees imposed upon him. The appellees will be collectively referred to as "the Department".

The Court of Appeals determined that the terms of Webb's original judgment and sentence on conviction provided a grace period of six months after Webb's release from prison before the court costs were due. Based on this fact and certain statutory provisions it found applicable, the Court of Appeals vacated the district court's denial of the writ of prohibition and remanded the matter to

---

**1.** Monetary credits awarded to prisoners for their labor are not true "wages" in an employer-employee sense. *See Cumbey v. State, infra.* However, for lack of a better term, we will refer to the monetary credits earned by Webb as "earnings" and "wages".

the district court with directions to issue an order prohibiting the Department from withholding Webb's earnings for court cost and victim compensation fees purposes.

Certiorari was granted to consider the first impression question of whether the Department may withhold a portion of a prisoner's prison earnings in order to apply that money toward the court costs and victim compensation fees imposed upon the prisoner as a result of conviction and incarceration.

■ We find the Department is authorized under 57 O.S.Supp.1993, § 549, *infra*, to withdraw a portion of Webb's earnings to apply towards the court costs and victim compensation fees. The opinion of the Court of Appeals is vacated, and the order of the district court is affirmed. The relevant facts follow.

Webb was convicted by jury of the crime of rape. Shortly thereafter, Webb was convicted by another jury of three felonies, to wit: oral sodomy, assault with intent to commit rape and robbery with a dangerous weapon. At the sentencing hearing for the rape conviction, the trial court ruled that the court costs and fees were to be paid "within six months after release." In addition, the trial court ordered Webb to "[p]ay the court costs in the sum of 70 dollars six months after release" for the other convictions. The Judgments and Sentences on Conviction issued by the trial court reflect these rulings.

Webb was incarcerated and while in prison began earning wages through prison industry employment. These wages were not distributed to Webb, but rather, were placed in a savings account established pursuant to statute. *See* 57 O.S.Supp.1993, § 549, *infra*. Webb's complaint arose when he discovered that the Department was deducting ten percent (10%) of his earnings and sending the money to the Oklahoma County Court Clerk to be applied towards the court costs and victim compensation fees he was ordered to pay by the district court.

Asserting such action by the Department amounted to a modification of the Judgment and Sentence on Conviction issued by the trial court in his criminal proceeding, Webb brought this original action to prohibit the Department from continuing to deduct court costs and victim compensation fees from his wages. His primary argument is that according to the Judgment and Sentence on Conviction, those costs and fees are not due until six months after he is released from prison and cannot be charged against him now.

The district court denied Webb's request finding that the sentencing court's intention was for all court costs and victim compensation fees to be "paid in full *either before or within six (6) month's of [Webb's] release.*" (Emphasis added) As such, the Department was not amending or modifying the Judgment and Sentence.

Title 57 O.S.Supp.1993, § 549, enumerates the powers and duties of the State Board of Corrections, including the power to collect and apportion wages of prisoners, to pay court costs and victim compensation fees. The Department principally relies on § 549 in justifying its actions. It reads, in pertinent part, as follows:

"A. The State Board of Corrections shall have the following powers and duties with respect to the operation of prison industries and administration of inmate trust funds:

\*    \*    \*    \*    \*    \*

4. The power to collect wages on behalf of the prisoner, to apportion inmate wages in accordance with the law; and the duty to preserve those wages reserved for the prisoner in an account for his benefit, and to establish procedures by which the prisoner can draw funds from this account under the conditions and limitations and for the purposes allowed by law;

5. The duty *to establish the percentages of such wages which shall be available for apportionment to inmate savings;* to the inmate for his personal use; to the lawful dependents of the inmate, if any; *to the victim of the inmate's crime;* for payment of creditors; *for payment of costs and expenses for criminal actions against such inmate;* and to the Department of Corrections for costs of incarceration. Provided, that not less than twenty percent (20%) of such wages shall be placed in

an account, payable to the prisoner upon his discharge or upon assignment to a prerelease program. Funds from this account may be used by the inmate for fees or costs in filing a civil action as defined in Section 151 et seq. of Title 28 of the Oklahoma Statutes or for federal action as defined in Section 1911 et seq. of Title 28 of the United States Code, 28 U.S.C., Section 1911 et seq.; and

\*   \*   \*   \*   \*   \*

B. The State Board of Corrections shall cause to be placed in an account income from the inmate's employment and any other income or benefits accruing to or payable to and for the benefit of said inmate, including any workers' compensation or Social Security benefits.

\*   \*   \*   \*   \*   \*

2. The Department of Corrections shall pay into the Crime Victims Compensation Revolving Fund, Section 142.17 of Title 21 of the Oklahoma Statutes, an amount equal to five percent (5%) of the gross wages earned by inmates employed in a private prison industries program, said amount to be paid from the amount deducted for cost of incarceration...." (Emphasis added)

In *Cumbey v. State*, 699 P.2d 1094 (Okla.1985), we construed a portion of § 549. Therein, we addressed the question of whether prison inmates had the right, prior to their release from prison, to withdraw and use the 20% of wages earned from prison industry employment that is "payable to the prisoner upon his discharge" pursuant to § 549(A)(5). In concluding the prisoners were not entitled to withdraw the funds except as provided by § 549, i.e. upon discharge, we held:

"It is well established that a state may legitimately restrict an inmate's privilege to earn a wage while incarcerated. The benefits of employment during incarceration are granted by the state as a privilege and not as a right.... In a realistic economic sense, we find that the monetary credits awarded to Appellants' prison accounts are not "wages" as defined in an employer-employee relationship. Inmates employed by prison industries are not state employees. 57 O.S.Supp.1984

§ 545(B). The state prison industries is not a proprietary corporation, but is rather concerned with providing for the proper government, discipline, treatment, care, rehabilitation, and reformation of state inmates. *In furtherance of these objectives, the state legislature may grant a favor to convicted criminals, but it may also attach such conditions to the granting of the favor as it deems proper....* Accordingly, the Oklahoma State Legislature has granted the gratuitous payment of monetary credits to inmates' accounts in the best interests of penology and societal concerns. *The inmate has no inherent legal right to the payment of this gratuity, nor to determine its form or amount. We therefore view the inmates' 20% prison accounts as conditional credits of potentially accessible funds, rather than vested property interests.* The State Board of Corrections has been given full power and authority by the legislature, in the area of prison management, to engage healthy and capable inmates in productive occupations within the prison, and to potentially provide compensation in its best judgment. We find no constitutional abuse in withholding the statutory 20% of allotted credits in an account payable to the prisoner upon the event of his release. Prison officials may legitimately wish to prevent the free flow of currency within the prison system, and provide an inmate with sufficient funds upon his release to assist him in readjustment to society at large without further aid from the state treasury.... *However, inasmuch as the credits are conditional and not vested property interests, present enjoyment is not constitutionally mandated.*

\*   \*   \*   \*   \*   \*

Finally, Appellants challenge that portion of 57 O.S.Supp.1984 § 542, supra, which provides for the payment by prison inmates of costs of incarceration, not to exceed 50%, from income derived from employment other than in state prison industries. The present Appellants do not allege income from such other sources as Veterans Administration benefits, Social Security benefits, Workers Compensation, royalty payments or stock dividends.

We find the challenged portion of 57 O.S.Supp.1984 § 542 constitutionally consistent with the principles previously elaborated insofar as it affects income from prison labor and inmate work release programs. The State of Oklahoma may authorize utilization of its prison inmate labor outside state prison industries. *However, the receipt of compensation for such labor by the prison inmate remains a gratuity, subject to reasonable restriction by the State. A withholding of the fruits of prison labor not in excess of 50% for costs of incarceration is rationally related to the legitimate state goal of maintaining state prisons in conformity with constitutional standards.*" 699 P.2d at 1097–98 (Emphasis added) (Citations omitted).

■ In the same way that the Legislature may restrict how or when the *inmate* has access to his prison earnings, the Legislature may authorize the Department to withdraw a portion of the earnings to apply towards the enumerated expenses, including court costs and victim compensation fees. *The payment of court costs and victim compensation fees is one such condition that the Legislature may attach to the favor of permitting inmates to earn wages through prison industry.*

The authorization given to the Department under § 549 is clear and unambiguous. While incarcerated, the funds earned by a prison inmate and deposited in his savings account may be withdrawn by the Department to pay the costs of prosecution, victim compensation fees, and other specified items as long as at least twenty percent of the inmate's earnings are paid to the prisoner upon his discharge from prison or assignment to a prerelease program.

The Court of Appeals ruled that 28 O.S. 1991, § 101 [2], and 22 O.S. 983 [3] when construed with § 549, supra, requires a different result.

■ Both § 101 and § 983 were enacted long before the Legislature began permitting prison inmates to earn the conditional monetary credits for labor performed while incarcerated. The clear purpose of both statutes was to provide a way for the courts to enforce that portion of sentences relating to costs and fees once a prisoner had served his prison sentence. The courts of this state have long held that the statutes *do not apply* to a prisoner until his release. *Jones v. State,* 682 P.2d 757 (Okla.Crim.App.1984); *Galcatcher v. Page,* 437 P.2d 284 (Okla.Crim. App.1968). The concept of a prisoner paying for court costs and victim compensation fees while incarcerated did not arise until the Legislature enacted legislation allowing inmates to earn wages through prison labor.

■ In short, § 549 permits the prisoner to discharge court costs and victim compen-

---

2. *"The fees herein provided for the clerk of the district court and the sheriff, as provided in this act, and all costs in the prosecution of all criminal actions shall, in case of conviction of the defendant, be adjudged a part of the penalty of the offense of which the defendant may be convicted,* whether the punishment for such offense be either imprisonment, or fine, or both, and fixed either by the verdict of the jury, or judgment of the court, trying the case, and if the defendant shall refuse to pay the fine, fees or costs, the payment of such fees and costs, in addition to the payment of the fine assessed, shall be enforced by imprisonment until the same shall be satisfied at a rate of Five Dollars ($5.00) per day of such fees and costs, or fine, or both, whether the defendant shall perform labor on the public road or highway, or remain in prison. If the defendant is without means to pay the fine, fees or costs, the total amount owed shall be entered upon the judgment docket and thereupon the same remedies shall be available for the enforcement of said judgment as are available to any other judgment creditor". (Emphasis added)

3. Title 22 O.S.1991, § 983, provides in pertinent part:

A. "Any defendant found guilty of an offense in any court of this state may be imprisoned for nonpayment of the fine and/or costs when the trial court finds that the defendant is financially able but refuses or neglects to pay the fine and/or costs. In no case may a sentence to pay a fine be converted into a jail sentence automatically, i.e., without a hearing and a judicial determination, memorialized of record, that the defendant is able to satisfy the fine and costs by payment but refuses or neglects so to do.

B. After a judicial determination that the defendant may be able to pay the fine and costs in installments, the court may order the fine and costs to be paid in installments and shall set the amount and due date of each installment."

sation fees during incarceration. Sections 101 and 983 apply when court costs and victim compensation fees are not paid before release from prison. Any other reading of these statutes renders one or the other meaningless, and our duty in statutory construction is to interpret a statute so as to render every part operative and to avoid rendering it superfluous or useless. *Medina v. State,* 871 P.2d 1379 (Okla.1993).

Webb argues that neither of these statutes apply to him because the court costs and victim compensation fees are not "due" yet. He asserts that *Petuskey v. Cannon,* 742 P.2d 1117 (Okla.1987), prohibits the collection of fines and costs in this case until adjudication that he must pay. We disagree. *Petuskey* involved a controversy between the Administrative Judge of a county and the County Court Clerk in which we determined the court clerk was without authority "to act in a judicial capacity and demand payment of fines, fees and costs, until there has been an adjudication that the person must pay." 742 P.2d at 1122. This decision was based on § 101 which we have already shown applies to inmates upon their release or upon those whose sentence does not include imprisonment. *Petuskey* does not apply to the case at bar.

■ In addition, fines and court costs are adjudged a part of the punishment upon conviction. *Ex parte Arnett,* 93 Okla.Crim. 116, 225 P.2d 381 (App.1950); *Whaley v. District Court of Mayes County,* 422 P.2d 227 (Okla.Crim.App.1966). The Legislature has authorized the withdrawal of a portion of an inmate's *prison wages* to apply towards those costs and fees under § 549 regardless of whether they are due under §§ 101 and 983 or not.

■ In a separate motion, Webb urged this Court to appoint appellate counsel to assist him in prosecuting this appeal. However, he does not have a clear legal right to the appointment of appellate counsel in a civil appeal where he is afforded access to the courts by constitutionally adequate means. *Gaines v. Maynard,* 808 P.2d 672 (Okla. 1991). Not only has Webb been afforded access to the courts, but he has also handled his case well enough to persuade the Court of

Appeals to overturn the order of the district court. Webb's application for assistance of appellate counsel is denied.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, and the order of the district court is AFFIRMED.

ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

KAUGER, V.C.J., and OPALA and SUMMERS, JJ., concur in part, dissent in part.