OSCN Found Document:SPENCER v. WYRICK

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 SPENCER v. WYRICK
2017 OK 19
Case Number: 115765
Decided: 03/07/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 19, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

SUSAN SPENCER and CHERI CHANDLER, Petitioners,
v.
JUSTICE PATRICK WYRICK, Respondent.
APPLICATION FOR EXTRAORDINARY RELIEF
¶0 Petitioners filed this original proceeding to challenge Governor Fallin's recent appointment of Respondent, Justice Patrick Wyrick, to the Oklahoma Supreme Court. Upon consideration, we assume original jurisdiction and dismiss the action with prejudice. 
ORIGINAL JURISDICTION ASSUMED; 
ACTION DISMISSED WITH PREJUDICE
Ryan D. Kiesel, Brady R. Henderson, ACLU of Oklahoma, Oklahoma City, Oklahoma, Attorneys for Petitioners
Neal Leader, Special Assistant Attorney General, Office of the Attorney General, Oklahoma City, Oklahoma, Attorney for Respondent
PER CURIAM
¶1 Petitioners, who allege they are residents and registered voters "of the Second Supreme Court District," filed this proceeding to contest Governor Fallin's recent appointment of Respondent, Justice Patrick Wyrick, to the Oklahoma Supreme Court. Petitioners challenge Justice Wyrick's eligibility to sit as a Justice on this Court and request quo warranto relief, or in the alternative, a writ of prohibition, barring Justice Wyrick from exercising "authority of an office to which he is constitutionally ineligible." Because this cause is publici juris, we assume original jurisdiction. See also Okla. Const. art. 7, § 4 ("The original jurisdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts and all Agencies, Commissions and Boards created by law."). 
¶2 Prohibition is not available as a corrective remedy to undo a completed act, and is not available to try the title to an office. Sneed v. State ex rel. Dep't of Transp., 1983 OK 69, ¶ 11, 683 P.2d 525, 529; State ex rel. Rucker v. Tapp, 1963 OK 37, ¶ 28, 380 P.2d 260, 267. "[A]n action in the nature of quo warranto will be deemed to constitute the exclusive remedy" to try the title to an office.[1] The law is unequivocally clear that a proper plaintiff in a quo warranto proceeding is the Attorney General, the District Attorney, or a contestant for the office at issue.[2] A "collateral attack by a private individual is not permitted."[3] Absolutely no facts were pled suggesting that either of the Petitioners is entitled to the office of Justice of the Oklahoma Supreme Court. This proceeding is clearly a collateral attack by a private individual and is not permitted. 
¶3 This Court possesses original jurisdiction to issue writs of quo warranto per 12 O.S. 2011 § 1532 and to issue writs of prohibition per Article 7, § 4 of the Oklahoma Constitution. Petitioners concede that under the Oklahoma Constitution neither the Senate acting as a court of impeachment nor the Court on the Judiciary has jurisdiction to consider a challenge to the qualifications of a sitting Justice by quo warranto or any other means. We agree. The untimely nature of this action[4] and the Petitioners' lack of standing require dismissal of this action with prejudice. The Respondent's request for fees and costs is denied. Any petition for rehearing must be filed by 5:00 p.m., Friday, March 10, 2017. 
ORIGINAL JURISDICTION ASSUMED; 
ACTION DISMISSED WITH PREJUDICE
¶4 Combs, C.J., Gurich, V.C.J., Kauger, Winchester, Colbert, and Reif (by separate writing), JJ., concur.
¶5 Watt (by separate writing), and Edmondson (by separate writing), JJ., concur in part and dissent in part. 
¶6 Wyrick, J., not present and not participating. 
FOOTNOTES
[1] Tapp, 1963 OK 37, ¶ 28, 380 P.2d 260, 267. Section 1532 of Title 12 allows an action in quo warranto "[w]hen any person shall usurp, intrude into, or unlawfully hold or exercise any public office, or shall claim any franchise within this state or any office in any corporation created by authority of this state." 12 O.S. 2011 § 1532. 
[2] State ex rel. Bd. of Regents v. McCloskey Bros., 2009 OK 90, ¶ 20, 227 P.3d 133, 145.
[3] Id. (emphasis added); See also 12 O.S. 2011 § 1531-1533. 
[4] See Okla. Const. art. 7B, § 3(e), which provides:
The concurrence of the majority of Commissioners in office at the time shall be sufficient to decide any question, unless otherwise provided herein. The Commission shall have jurisdiction to determine whether the qualifications of nominees to hold Judicial Office have been met and to determine the existence of vacancies on the Commission.
See also Fent v. Henry, 2011 OK 10, ¶ 21, 257 P.3d 984, 994 (finding that the Judicial Nominating Commission's decisions are valid when decided by a majority of its members). 

REIF, J., concurring
¶1 A court, including this Court, has a duty to inquire into whether it possesses jurisdiction over the subject matter of an action that has been brought before the court. Dutton v. City of Midwest City, 2015 OK 51, ¶ 15, 353 P.3d 532, 53. "[This Court's] inquiry requires us to examine the nature of [the] pled cause of action and the remedy [sought] in this Court and determine whether that cause of action and remedies for that action are within the jurisdiction of this Court." Id., ¶ 16, 353 P.3d at 539. 
¶2 In the case before us, the subject matter of the parties' controversy is the appointment of Justice Patrick Wyrick to this Court. More particularly, two citizens ask this Court to redetermine the issue of whether Justice Wyrick has met the qualifications for his office.
¶3 The people of Oklahoma addressed the subject matter of "the selection and tenure of all Justices of the Supreme Court" in Article 7B, § 1, of the Oklahoma Constitution. In doing so, the people plainly said the provisions of Article 7B "govern" this subject matter. The people further expressed their intent that Article 7B "govern" this subject matter, "other provisions of the Constitution or statutes of the State of Oklahoma to the contrary notwithstanding, and the provisions of Article [7] . . . to the contrary notwithstanding." The people have made it clear that Article 7B will exclusively "govern" the subject matter of selection of a Supreme Court Justice. 
¶4 As concerns the actual selection of a Justice to this Court, the people of Oklahoma established a process and vested two agents with power to judge the qualifications of persons seeking the office of Supreme Court Justice. The agents vested with the power to judge the qualifications of an applicant are the Judicial Nominating Commission and the Governor. The process in which these agents exercise their power has two stages. 
¶5 The first stage of the constitutional selection process is conducted by the Judicial Nominating Commission. The people have expressly provided that: "The Commission shall have jurisdiction to determine whether the qualifications of nominees to hold Judicial Office have been met." Okla. Const. Art. 7B, § 3 (e). At the conclusion of this stage, the Commission nominates the three applicants it has determined to be best qualified.
¶6 The second stage of the constitutional selection process is conducted by the Governor. The people of Oklahoma have vested the ultimate power to judge the qualifications of the nominees in the Governor. The exercise of jurisdiction by the Commission and by the Governor in the selection of a Supreme Court Justice involves a considerable degree of judgment.
¶7 In performing their respective functions, and in their exercise of judgment, the Commission and Governor have a duty to hear and consider any comments by individual citizens concerning the qualifications or fitness of the applicants they review. Individual citizens of Oklahoma, where ever they may reside, have the right to question the qualifications or fitness of any or all of the applicants, or to object to their selection as a nominee or appointee. The time to do so, however, is during the respective stages of the selection process. That is the point in time that citizen questions and objections must be weighed and addressed by the only officials that have jurisdiction "to determine whether the qualifications of nominees to hold Judicial Office have been met." This likewise provides a measure of due process to allow applicants to be heard concerning such questions or objections.
¶8 The fact that Article 7B provides the complete and exclusive process for the selection of a Supreme Court Justice does not mean that certain acts by the agents of that process (the Commission and Governor) are completely beyond judicial relief. For example, if the Commission refused to meet, mandamus would be available to compel the Commission to perform this constitutional duty, but could not direct the Commission in regard the exercise of its judgment upon meeting. Similarly, if the Governor selected and appointed a Supreme Court Justice without following the process specified by Article 7B, judicial relief would be available to void such an illegal act. 
¶9 Unlike these examples, both the Commission and Governor duly exercised their constitutionally vested subject matter jurisdiction for the selection of Justice Wyrick to serve on this Court. The constitutional process has been completed, and his qualifications to hold the office of Supreme Court Justice are, in my opinion, finally and conclusively determined. 
¶10 In the future, it would behoove the Commission and the Governor to be very proactive in letting the citizens of this State know (1) when the Article 7B process to fill a particular office has begun and will be pending, (2) the persons who have applied, or who have been nominated, and (3) what time frame will be allowed for citizens to provide comment to the Commission and Governor. 
¶11 The foregoing considerations lead me to conclude that this Court lacks subject matter jurisdiction over both the controversy and the relief sought. I therefore join in the assumption of original jurisdiction for the limited purpose of deciding this jurisdictional issue and join the dismissal of relief. 

WATT, J., concurring in part, dissenting in part:
While I concur in part with the reasoning expressed in the majority opinion, I write separately to express my views concerning the unprecedented issue which currently stands submitted to this Court. 
I concur that our Article 7 authority vests in us power to review the actions of inferior courts, agencies, boards and commissions, including the Judicial Nominating Commission. We cannot exercise that power under the theories pressed by these two petitioners.
The critical issue confronting us cannot be resolved without more facts than those contained in the record before us.
I dissent to the majority's dismissal with prejudice, albeit only as to these two petitioners.
Adoption of the majority opinion does not nor can it resolve the ultimate issue. 
Accordingly, I would have simply issued a special order denying the petitioners quest for original jurisdiction and a writ, without prejudice to seeking its resolution of the issue in the appropriate forum below.
By so doing, all parties would have the due process rights they deserve and any subsequent review could be done upon a more fact-filled record to resolve what I believe to be the most critical issue this court has ever faced.

EDMONDSON, J., Concur in Part and Dissent in Part.
¶1 I concur in part and dissent in part to the Court's opinion for the following reasons.
¶2 Generally, no exercise of State executive power, State legislative power, or State judicial power is beyond this Court's Article 4 constitutional role of review[1] or the Court's Article 7 adjudicatory jurisdiction or power to review that exercise of State power, unless the Constitution vests an exclusive judicial power in a different constitutional entity.[2] The exercise of State power by the Judicial Nominating Commission is subject to review by an Oklahoma Constitution Article 7 court when presented with a legally justiciable controversy, unless the Constitution expressly vests jurisdiction of such controversy in a different entity.[3] 
¶3 In 1978 this Court explained that a person holding an Oklahoma Constitution Article 7 judicial office is removed or suspended by the means provided by law.[4] We cited the language in the Constitution[5] and explained a judicial officer is removed from office by a proceeding in the Court on the Judiciary and by other means expressly provided by the Constitution and laws of the State.[6] No express statutory or constitutional removal remedies are invoked by the parties in this proceeding, but they seek a remedy resulting in the proposed removal of a state official.[7]
¶4 Petitioners make a conclusory allegation that legal remedies are not available for the relief they seek. They make no legal analysis or cite applicable legal authority supporting their allegation that legal remedies expressly mentioned by this Court in previous opinions are insufficient for the relief they seek. Petitioners failed to satisfy their burden that they possess an inadequate or legally insufficient right of action.[8] Any cause of action, no matter what judicial label or form is attached thereto, which seeks removal of an Article 7 Judge or Justice, must comply with remedies provided by the Constitution and State statutes,[9] and a petitioner seeking the same ultimate relief by a method other than those remedies must explain with a legal analysis why those remedies are not appropriate. 
¶5 The People are vested with supreme and sovereign authority as the source of all governmental power and authority.
[10] This Court has no Article 7 adjudicatory power to restrict the constitutional remedies for removal of a judicial official,[11] and this Court has no Article 7 power to enlarge upon those remedies without a petitioner showing that the remedies so provided are completely ineffectual to guarantee the rights of the citizens of the State or to carry into effect the Will of the People.[12] 
¶6 Courts possess both express and inherent powers to adjudicate a cause of action alleging a violation of law.
[13] But if we were to accept jurisdiction and adjudicate the merits of petitioners' claims, then such adjudication would be an exercise of Article 7 judicial power as to whether an Article 7 judicial officer should be removed from office. Article 7 Judges and Justices are granted constitutional authority to manage and administer the affairs of the judicial office,[14] but this Court is not an ultimate authority on whether a sitting Justice should be removed from office.[15] 
FOOTNOTES
[1] Romang v. Cordell, 1952 OK 139, 243 P.2d 677, 679 (the Oklahoma Supreme Court has the State constitutional power and duty pursuant to Art. 4 § 1 to prevent any State government entity from violating the State Constitution when that issue is presented to the Court by a judicially cognizable cause of action unless the State Constitution forbids the Court from acting in a certain circumstance). See also York v. Turpen, 1984 OK 26, 681 P.2d 763, 767 (the Court possesses the Okla. Const. Art. 4 § 1 role of determining constitutional validity of a statute).
Okla. Const. Art. 4 § 1:
The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. 
[2] Okla. Const. Art. 7 § 1:
The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings. Provided that the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute shall continue in effect, subject to the power of the Legislature to change or abolish said Courts, Boards, Agencies, or Commissions. Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances.
Okla. Const. Art. 7 § 4 begins with the statement: 
"The appellate jurisdiction of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; . . .The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law...." (Emphasis added). 
[3] For example, in McKye v. State Election Bd. of State of Oklahoma, 1995 OK 15, 890 P.2d 954, the Court explained that Okla. Const. Art. 5 § 30 expressly states "Each House shall be the judge of the elections, returns, and qualifications of its own members..." and this express constitutional vesting of this controversy in the Legislature removed it from an Article 7 court's judicial review. 
[4] Graham v. Cannon, 1978 OK 9, 574 P.2d 305. 
[5] Okla. Const. Art. 7-A, § 1(a): In addition to other methods and causes prescribed by the Constitution and laws, the judges of any court, exercising judicial power under the provisions of Article VII, or under any other provision, of the Constitution of Oklahoma, shall be subject to removal from office, or to compulsory retirement from office, for causes herein specified, by proceedings in the Court on the Judiciary. 
[6] Graham v. Cannon, 574 P.2d at 307, 308, citing Okla. Const. Art. 7-A, § 1(a). 
[7] For example, in addition to discussing the Court on the Judiciary, Cannon discusses a removal action by 22 O.S.§ 1181 (which specifies causes for removal for any officer not subject to impeachment), and an ouster action 51 O.S. § 91 (removal for state officers not subject to impeachment). Cannon, 574 P.2d at 308. 
[8] In re M.K.T, 2016 OK 4, ¶ 61, 368 P.3d 771 ("Generally, a burden to present facts, claims and legal arguments falls on the party who asserts an entitlement to the judicial relief sought."). 
[9] Ethics Commission v. Cullison, 1993 OK 37, 850 P.2d 1069, 1073 ("Since 1893 this jurisdiction has recognized that forms of action are abolished."). 
[10] Romang v. Cordell, 1952 OK 139, 243 P.2d 677, 679. 
[11] Smith v. Bovaird Supply Co., 1980 OK 129, 616 P.2d 1157, 1159 (the Court has no power to restrict a constitutional remedy or right ). 
[12] Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 43, 270 P.3d 113, 125 (equity may not be used to supplant adequate legal remedies); Macy v. Oklahoma School Dist. No. 89, 1998 OK 58, ¶ 25, 961 P.2d 804, 810 (Equity is not used to create a remedy in place of a statutory remedy when no showing has been made that the statutory remedy is inadequate). 
[13] Vandelay Entertainment, L.L.C. v. Fallin, 2014 OK 109, ¶ 13, 343 P.3d 1273, 1276 (Three branches of government, including the Judicial, possess inherent powers essential to the functions of each branch.). 
[14] Petuskey v. Cannon, 1987 OK 74, 742 P.2d 1117, 1120. 
[15] Sharpe v. State ex rel. Oklahoma Bar Association, 1968 OK JUD 1, 448 P.2d 301, 306. 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court on the Judiciary
 Cite
Name
Level

 1968 OK JUD 1, 448 P.2d 301, SHARPE v. STATE EX REL. OKLAHOMA BAR ASS'N
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 74, 742 P.2d 1117, 58 OBJ 2238, Petuskey v. Cannon
Discussed
 1993 OK 37, 850 P.2d 1069, 64 OBJ 978, Ethics Com'n of State of Okl. v. Cullison
Discussed
 1952 OK 139, 243 P.2d 677, 206 Okla 369, ROMANG v. CORDELL
Discussed at Length
 1963 OK 37, 380 P.2d 260, STATE v. TAPP
Discussed at Length
 1995 OK 15, 890 P.2d 954, 66 OBJ 777, McKye v. State Election Bd. of State of Oklahoma
Discussed
 2009 OK 90, 227 P.3d 133, STATE ex rel. BOARD OF REGENTS v. McCLOSKEY BROTHERS, INC.
Discussed
 2011 OK 10, 257 P.3d 984, FENT v. HENRY
Discussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSA
Discussed
 2014 OK 109, 343 P.3d 1273, VANDELAY ENTERTAINMENT, LLC v. FALLIN
Discussed
 2015 OK 51, 353 P.3d 532, DUTTON v. CITY OF MIDWEST CITY
Discussed
 1978 OK 9, 574 P.2d 305, GRAHAM v. CANNON
Discussed
 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.
Discussed
 1980 OK 129, 616 P.2d 1157, Smith v. Bovaird Supply Co.
Discussed
 1998 OK 58, 961 P.2d 804, 69 OBJ 2254, MACY v. OKLAHOMA CITY SCHOOL DIST. NO. 89
Discussed
 1983 OK 69, 683 P.2d 525, Sneed v. State ex rel. Dept. of Transp.
Discussed
 1984 OK 26, 681 P.2d 763, 55 OBJ 1013, State ex rel. York v. Turpen
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1532, Action to be Brought in the Supreme Court or District Court, in the Following Cases
Discussed
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1181, Removal of Officers from Office
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 91, Officers Subject to Removal
Cited