ROMANG v. CORDELL.

No. 35395.   April 1, 1952.

Rehearing Denied April 23, 1952.

*243 P. 2d 677.*

Richard E. Romang, Enid, pro se.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen. for respondent.

Don Welch, Sr., Madill, amicus curiae.

DAVISON, J. This is an original action in this court wherein the petitioner, Richard E. Romang, a voter and taxpayer of the State of Oklahoma, a resident of Garfield county and a State Representative therefrom, seeks the issuance of a writ of mandamus, directing the respondent, J. William Cordell, Secretary of the Election Board of the State of Oklahoma, to refuse to accept and file certain notifications and declarations of candidacy for nomination and election as members of the House of Representatives because of the alleged invalidity and unconstitutionality of parts of the 1951 act of the Legislature apportioning members of said House of Representatives.

The act under attack is House Bill No. 348 of the 1951 Legislature which is also designated 14 O. S. 1951 §§93-96, inc. The purpose of the act was to provide for "legislative apportionment of the House of Representatives; vitalizing art. V, §10 of the Constitution of the State of Oklahoma; establishing the decennial legislative period of November 16, 1952—November 15, 1962, and dividing it into biennial legislative periods; establishing legislative districts and the number and boundaries thereof; designating the number of representatives for each county of the State; and repealing Acts in conflict."

Petitioner contends that "under said Apportionment Act, thirty-five counties are allotted the exact number of State Representatives to which they are entitled, but forty-two different counties are allotted *more* representatives than permitted under the Constitution (art. V, §10); that the petitioner, as well as every other citizen living in a county having a constitutional number of State Representatives, is deprived of equal representation with those in the forty-two counties having extra State Representatives out of proportion to their population."

It is not necessary to here discuss, in detail or at length, the constitutionality of the act under consideration. It violates the provisions of art. V, §10 of the Oklahoma Constitution, in the same particulars and to approximately the same extent as the previous apportionment acts and is, therefore, subject to the same criticisms which were discussed thoroughly in the case of Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564. In that opinion, this court pointed out, with particularity, the "principles expressed or implied in the Constitution, (which) must be observed," in order for an appointment act to be constitutional. None of these were followed in the preparation and passage of the 1951 act. It would serve no useful purpose to here repeat them or the legal foundation upon which they rest.

Of much more practical importance, is the other proposition with which we are confronted, namely, whether or not this court has power to grant the relief sought. In its zeal to prevent another from violating the provisions of the Constitution and exercising a power not authorized thereby, the court should not overlook the fact that its authority also springs from and is limited by the provisions of that same fundamental law. In a democratic form of government, the Constitution is the expression of the will of the people, the source of all governmental power and authority. Therefore, if a power is not, by the Constitution, conferred upon some department or officer of the government, it remains in the people.

"The People are vested with the supreme and sovereign authority. The Constitution is the voice of the People speaking in their sovereign capacity. (Matter of N. Y. Elevated R. R. Co., 70 N. Y. 327, 342.)

"An act of the legislature is the voice of the People speaking through their representatives. The authority of the representatives in the legislature is a delegated authority and it is wholly derived from and dependent upon the Constitution." In the Matter of Sherrill v. O'Brien, 188 N. Y. 185, 81 N. E. 124.

The case of Fergus v. Marks, 321 Ill. 510, 152 N. E. 557, 46 A. L. R. 960, involved an application for a writ of mandamus compelling the Legislature to reapportion the state into legislative districts as required by the Constitution. In holding that it did not have jurisdiction to issue the writ, the court made the following statement:

" . . . the powers of the government of this State are divided into three distinct departments, — the legislative, executive and judicial, — and no person or collection of persons, being one of these departments, may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the Constitution. Neither of these three departments is subordinate to or may exercise any control over another except as is provided by the Constitution. . . ."

The opinion in the Jones v. Freeman case, supra, contains an extensive discussion of the jurisdiction of the court to determine the constitutionality of apportionment acts together with a collection of citations of many cases from other states dealing with the same proposition. Therein, art. V, §10(j) of the Constitution, which provides as follows:

"An apportionment by the Legislature shall be subject to review by the Supreme Court at the suit of any citizen, *under such rules and regulations as the legislature may prescribe, . . .*"

was mentioned several times but there was no determination of whether or not it was self-executing or, if so, the extent of its effectiveness. It was there said:

"Assuming that section 10(j), above, is self-executing, it does not follow that this court would have authority to revise and change the districts as fixed by the Legislature and as urged by the petitioner. While in some instances the words 'review' and 'revise' are used synonymously, we do not believe the framers of the Constitution so used the word 'review' in said provision. This court should not assume such authority, which is generally considered a leg-

islative function, except where the language used *is* plain and compelling. It should not do so by a process of construction of language of doubtful meaning. Neither may we, by mandamus or otherwise, require the Legislature to enact proper apportionment statutes. The theory of separation of the powers of government prevents our doing so. The Legislature, being a co-ordinate branch of the government, may not be compelled by the courts to perform a legislative duty, even though the performance of that duty be required by the Constitution."

An analysis of the situation in the case at bar supplies several reasons why said section 10(j) of article V of the Constitution, and legislative enactments supplementary thereto (which have never been made in this state), would be beneficial and why the constitutional provision, standing alone, does not meet the requirements of many situations. The only parties actually before the court here are the plaintiff, who is a resident of, and State Representative from Garfield county, and the defendant, who is Secretary of the State Election Board, and who could have little, if any, actual adverse interest in the litigation. Any relief granted plaintiff, in line with the prayer of the petition, would adversely affect all residents of 42 of the 77 counties of the state, by depriving them of representation, in whole or in part, in the lower house of the Legislature. By granting the writ prayed for, 18 counties having a combined population of over 157,000 would be denied representation in the House of Representatives. The wording of the section indicates that the framers of the Constitution foresaw that just such a situation could arise and, therefore, so drafted the same that there might be a judicial review of the act in conformity with *rules and regulations to be prescribed by the Legislature* which would include some form of notice to interested parites and an opportunity for them to defend their rights. Until that is done, any review by the court is, for all practical purposes, little more than ex

parte and the jurisdiction of the court need not be greater than is provided by other parts of the Constitution or is naturally inherent. No rules and regulations for such review have been adopted nor has the supreme sovereign power, the people, seen fit to force such action. Until it is done, no effectual relief can be enforced by the courts because they have "no power, under the Constitution, to compel the Legislature to (properly) reapportion the State, as required by the Constitution. * * * What this court cannot do directly in this respect it cannot do indirectly." People ex rel. Fergus v. Blackwell, 342 Ill. 223, 173 N. E. 750.

In the case of Burns v. Flynn, 155 Misc. 742, 281 N. Y. S. 494, the petitioner sought an order of mandamus directing the Secretary of State and the Board of Elections of the City of New York to certify certain additional Senators and assemblymen in a certain county in New York because of an increase in population as shown by the latest Federal census. The court denied the writ, holding that reapportionment "is clearly the duty of the Legislature," and a failure on their part "to act certainly does not give this court power to order an apportionment or assignment of legislative representatives." The same rule would apply to the cancelling of an apportionment or assignment. Such in effect was the holding of this court in the case of Grim v. Cordell, 197 Okla. 144, 169 P. 2d 567.

Whether or not this court should issue any of the writs authorized by art. VII, §2 of the Constitution, when another co-ordinate branch of the government violates constitutional provisions, depends upon their necessity in order to safeguard the "sovereignty of the state, its franchises or prerogatives or the liberties of its people." State v. Frear, 148 Wis. 456, 134 N. W. 673. Such necessity is, in turn, dependent upon the facts in each particular case.

The following statement, made in the case of Jones v. Freeman, supra, is applicable to the case at bar:

"But, though it may be conceded that we have the power to declare all apportionment statutes enacted since statehood void and to require the next election to be held under the apportionment made by the Constitution, it does not follow that we should do so. The result of such action would be to increase the inequality of representation already existing."

The solution of the problem, in its final analysis, is solely in the hands of the people as the supreme sovereign. They may elect members of the Legislature who will enact a reapportionment act in conformity with the constitutional requirements as outlined herein and in the case of Jones v. Freeman, supra, or who will prescribe rules and regulations whereby this court may review and revise such acts as contemplated in art. V, §10(j) of the Constitution; or they may initiate a proper statute; or, as said in Jones v. Freeman, supra, "they may follow the example of other states . . . and amend the Constitution to take the power of apportionment from the Legislature and vest it in a special officer or board or representative of the state as a whole."

The writ is denied.

WELCH, GIBSON, JOHNSON, and BINGAMAN, JJ., concur. CORN, J., concurs in result. ARNOLD, C. J., HALLEY, V. C. J., and O'NEAL, J., dissent.

HALLEY, V. C. J. (dissenting). The case at bar is different from the other cases arising in this state on the matter of legislative apportionment. No demand is made on the Legislature to do anything. The only thing sought here is to require the Secretary of the State Election Board to refuse to receive filings for the Legislature from those counties that do not have sufficient population, under the Constitution of Oklahoma, to entitle them to a mem-

ber in the Legislature, and to deny any filings from any county in excess of what the Constitution entitles it to. All hands agree that the apportionment made by the 1951 Legislature is unconstitutional insofar as it gives one representative to each of the 18 counties that do not have a population of 11,166, the minimum population that a county must have to be entitled to a representative under art. V, §10(d), Oklahoma Constitution, and is also unconstitutional insofar as it gives 24 counties representatives in excess of the number to which their population entitles them under art. V, §10(d) and (e). I set out the paragraphs of art. V, §10, which are pertinent to this case:

"(c) The whole population of the State as ascertained by the Federal census, or in such manner as the Legislature may direct, shall be divided by the number one hundred and the quotient shall be the ratio of representation in the House of Representatives for the next ten years succeeding such apportionment.

"(d) Every county having a population equal to one-half of said ratio shall be entitled to one representative; every county containing said ratio and three fourths over shall be entitled to two representatives, and so on, requiring after the first two an entire ratio for each additional representative: Provided, that no county shall ever take part in the election of more than seven representatives.

"(e) When any county shall have a fraction above the ratio so large that being multiplied by five the result will be equal to one or more ratios, additional representatives shall be apportioned for such ratio among the several sessions of the decennial period. If there are two ratios, representatives shall be allotted to the fourth and third sessions, respectively; if three, the third, second and first sessions, respectively; if four, to the fourth, third, second, and first sessions, respectively."

That being the case, we have the right to direct the Secretary of the Elec-

tion Board to refuse to receive filings for the Legislature from such counties.

This court said in Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, that where apportionment Acts are found to be in conflict with the Constitution, we may, where justice requires, declare them to be invalid and enforce our decree by proper writs running to the election officials, and cited State v. Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561; 16 C. J. S. 147, p. 438; 18 Am. Jur. 197. I think that this is true where the apportionment is partially invalid.

The makers of the Constitution saw the possibility that some counties might lose population and provided for such a contingency in par. (g) of §10, art. V, by providing that such counties should be attached to adjoining counties. Never since statehood have Cimarron and Harper counties had enough population to entitle them to representatives, but the 16 others which do not now have sufficient population have had. All of the 18 counties should have been attached to other counties to become a part of a legislative district, but the 1951 Act disregarded the Constitution and gave each county a representative.

There might be some justification for permitting the Act to stand as to counties which would be deprived of representation in the lower house of our Legislature for at least two years. However, I do not think it is justifiable, in order to accomplish this, to override the Constitution and cause the state the expense of 18 legislators. Those counties will still be represented in the Senate. But be that as it may, there can be no justification before either God or man for giving a county additional representation when its population, according to the Constitution, does not permit it. How can anyone explain why Pittsburg county, with a population of 41,031, should be entitled to as many members in the Legislature as Muskogee county, with 65,573, when Pittsburg county, under the Constitution, is entitled to only two members? Mus-

kogee county has a greater population above the ratio requirement needed to give it three representatives than Pittsburg county has over what it takes to give it two representatives. How can an Act be said to be constitutional when it gives one county greater representation than another with a greater population? Lincoln county has 22,102 people, and gets an additional legislator in three sessions of the decennial period, while Logan county with 22,170, has only one representative for the five sessions. Why should Pittsburg county have more representatives than Payne or Cleveland counties, both more heavily populated? Why should Hughes county, with a smaller population, have more representatives than Canadian county? Why should Pottawatomie county have one more representative than Kay county, which is larger? Why should Garfield county, the fifth county in size in the state with 52,820 people, have fewer representatives than Seminole county, which is thirteenth in size with 40,672 people? Why should Okfuskee county, with 16,948 people, be entitled to more representatives than Choctaw county, with 20,405? Or why should Washita county, with 17,657 people, be entitled to greater representation than either of the following counties with larger population: Sequoyah with 19,773; Mayes with 19,743; Rogers with 19,532; or Cherokee with 18,989? And there are many other discriminations in the act which could be pointed out.

The question, then, naturally arises: Why should any county receive more representation than it is allowed under our Constitution?

We have never said that we had the right to tell the Legislature that it had to pass certain legislation; but when the Legislature does something that is unconstitutional, it is our duty to so declare it, and to use the powers at our command to prevent unconstitutional legislation from being foisted upon the people of this state.

If we are required to adhere to the Constitution as to Tulsa and Oklahoma counties and not allow them more than seven representatives each because the Constitution, wisely or unwisely, says so, why should not that same Constitution control as to the requirements for other counties?

I cannot say what prompted the makers of the Constitution to set up the requirements they did, but certainly government expenditures were considered. House Bill 348 of the 1951 Legislature will cost the state more than $750,000 for salaries and mileage to provide for 129 extra and unconstitutional representatives over the ten-year period. The wisdom of the expenditure is not a question here.

Reapportioning the state for the House of Representatives is a very simple task under the Constitution. The Legislatures of 1911 and 1921 did it properly, and there is no reason why it cannot be done now.

I am aware that the Legislature is a human institution, and the personal element has great force. We should not criticize that body for the passage of unconstitutional legislation, but we should be criticized if we do not declare its unconstitutional acts unconstitutional, as that is our duty. This is no time to equivocate.

From the failure of the majority opinion to issue a writ against the Secretary of the State Election Board requiring him to refuse to receive filings for the Legislature from the 18 counties that do not have the required population of one representative under the Constitution, and to refuse to receive filings from other counties for additional representatives to which they are not entitled under the Constitution, I dissent.

O'NEAL, J. (dissenting). The majority opinion assumes that the legislative Apportionment Act, Title 14 O. S. 1951 §§93-96, may be sustained as a valid exercise of discretionary power of the Legislature. That assumption vio-

lates the express wording of the Constitution for it is manifest that the constitutional provisions have been disregarded. The framers of the Constitution in art. V, §10(b) provided:

"The apportionment of this State for members of the Legislature shall be made at the first session of the Legislature after each decennial Federal census."

and in §10(c) provided:

"The whole population of the State as ascertained by the Federal census, or in such manner as the Legislature may direct, shall be divided by the number one hundred and the quotient shall be the ratio of representation in the House of Representatives for the next ten years succeeding such apportionment."

and in §10(i) provided:

"Ascertaining the ratio of representation according to the Federal census, or such other enumeration as the Legislature may provide, and attaching any county, previously having a separate representative but found to have less than the number required by the ratio, to an adjoining county; and determining the number of representatives each county or district shall be entitled to, and for what sessions of the Legislature within the next decennial period; and apportioning the Senators, shall be done by the Legislature and be presented to the Governor for his approval in the same manner as other bills which may be passed by the Legislature."

and in §10(j) provided:

"An apportionment by the Legislature shall be subject to review by the Supreme Court at the suit of any citizen, under such rules and regulations as the Legislature may prescribe. And such court shall give all cases involving apportionment precedence over all other cases and proceedings; and if said court be not in session, it shall convene promptly for the disposal of the same."

It was not contended at the bar that the Legislature has by act, resolution, rule or otherwise adopted a plan or scheme as a substitute for the recited constitutional provisions. The argument that we must indulge the presumption that the Legislature has so acted, though we find no symbol to guide us, is based on too tenuous an argument for adoption. The legislative act is neither based on population or geographical lines, but upon an undisclosed formula, the application of which is left to the arbitrary or capricious acts of those empowered to enforce the act. The inequalities and inequities thus created will be illustrated infra.

Although the Constitution twice states that the population of the whole state, as ascertained by a Federal census, shall, until otherwise provided by the Legislature, be the sole method of making the apportionment for members to the House of Representatives, the opinion labors the application of sec. 10(j) as to whether that section is self-executing. It cannot be successfully contended that Sec. 10(j) is ambiguous. It expressly gives any citizen the right to challenge in this court any act of the Legislature purporting to make an apportionment for representation in the House of Representatives. The argument is made that sec. 10(j) also provides that the action can only be maintained under such rules and regulations as the Legislature may prescribe.

The Legislature is not commanded to promulgate rules and regulations, but is given permissive authority so to do. The inherent power of the court, as well as the express language of sec. 10(j), gives this court power and authority to entertain an action of a citizen who challenges the constitutionality of the Apportionment Act in question.

In my view of the case, one simple question is presented for our review, that is, whether the Apportionment Act of the 1951 Legislature here drawn in question is constitutional. We can lay to one side the statement in the opinion that only the plaintiff, a citizen, is before the court, and that this action would adversely affect all residents of 42 of the 77 counties of the state, by depriving them of representation, in

376

whole or in part, in the Legislature. Suffice is to say the plaintiff is here under the authority of the express language of the Constitution. The residents of the 42 counties are here, so far as their appearance is required, by the Attorney General, who has ably represented their position before this court. But the opinion emphasizes that under sec. 10(j) that the review should be denied in the absence of an affirmative showing that the Legislature has promulgated rules and regulations governing ·the review. This indeed is a novel assertion. In effect, it bars this court under its constitutional power to review the Apportionment Act on the sole ground that the Legislature has neglected to pass rules governing the review. This assumption is unsupported by citation of precedent to sustain it. Moreover, I am unable to concede that an important constitutional provision can be nullified by inaction more readily than by affirmative action. Neither do I find myself able to agree with the majority opinion that this proceeding is little more than ex parte determination of the issues. It is not pointed out what necessary parties are absent.

On two previous occasions we have held that any citizen of the state is entitled to maintain an original action in the Supreme Court under authority of art. VII, §2, of the Constitution to test the constitutionality of legislative apportionment acts and to have enforcement of the judgment in such case by the proper writ. Jones v. Cordell, Secretary, et al., 197 Okla. 61, 168 P. 2d 130; Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564.

The assertions advanced in argument that 18 counties each have less than one-half of a representative ratio in population based on a Federal census enumeration and that 24 other counties have been allotted excessive representation according to the Constitution and the Federal census, are not controverted, but are in effect admitted. Moreover, we are impotent to construe the constitutionality of the act, as the

majority opinion points out, because only the people in their sovereign power through a constitutional amendment can force the Legislature to adopt the necessary rules and regulations suggested in the Act. The opinion, in this respect, shears the court of its constitutional function solely on the theory that the Legislature has neglected to exercise a permissive function and not an express demand of the Constitution. The majority opinion tacitly admits that the court is powerless to judicially determine the constitutionality of the Apportionment Act. The opinion states:

"The solution of the problem, in its final analysis, is solely in the hands of the people as the supreme sovereign. They may elect members of the Legislature who will enact a re-apportionment act in conformity with the constitutional requirements as outlined herein and in the case of Jones v. Freeman, supra, or who will prescribe rules and regulations whereby this court may review and revise such acts as contemplated in Article V, sec. 10(j) of the Constitution; . . ."

In Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, we construed the identical provisions above referred to of the State Constitution, and we there held the provisions of the Oklahoma Constitution for enacting legislative apportionment acts are mandatory. And in that case we said that this was a continuing duty and if not exercised at one session of the Legislature, the duty should be performed at a succeeding session.

In the majority opinion in the case before us it is suggested that the people have not seen fit to amend the Constitution to force the Legislature to adopt rules and regulations to comply with sec. 10 (j) and fortior we are without jurisdiction in the premises. I readily concede as the opinion holds that the court has "no power" under the Constitution to compel the Legislature to "properly" re-apportion the state, as is required by the Constitution, but I do not hold with the majority view that the Act of apportionment cannot

be held null and void when it not only totally disregards but completely ignores the express mandate of the Constitution.

Moreover, we held in Jones v. Freeman, as well as in Jones v. Cordell, supra, that the Supreme Court has original jurisdiction of an action to test the constitutionality of legislative apportionment by any of the appropriate writs mentioned and that such jurisdiction is not affected by the provisions or art. V, §10(j) of the Constitution, as the power is expressly vested in this court under art. VII, §2 of the State Constitution of Oklahoma.

For the reasons herein stated, I respectfully dissent from the majority opinion in this case. I would grant the writ.